IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EMCODE REIMBURSEMENT           §
SOLUTIONS, INC., et al.,       §
                               §
                               §
              Plaintiffs,      §
                               § Civil Action No. 3:05-CV-1551-D
VS.                            §
                               §
NUTMEG INSURANCE COMPANY,      §
                               §
              Defendant.       §

MEMORANDUM OPINION
AND ORDER

The principal question presented in this insurance coverage
dispute is whether the insured gave timely notice of its claim
under a claims-made policy.  Concluding that it did not, the court
grants summary judgment dismissing plaintiffs' breach of contract
action.  The court also concludes that plaintiffs have failed to
demonstrate that they have viable extracontractual claims or that
granting them leave to amend would not be futile.  Accordingly, the
court dismisses this case with prejudice.

I

In this removed action, plaintiffs EmCode Reimbursement
Solutions, Inc. ("EmCode") and EmCare, Inc. ("EmCare") sue
defendant Nutmeg Insurance Co. ("Nutmeg") on claims for declaratory
judgment, bad faith denial of coverage, unfair settlement practice,
breach of contract, and attorney's fees arising from Nutmeg's
refusal to defend and indemnify EmCode and EmCare in litigation
filed in the United States District Court for the Northern District

of Oklahoma. In that lawsuit—the "*Green Country Litigation*"—Green Country Emergency Physicians, P.C. ("Green Country"), a professional group for emergency physicians, sued Healthcare Administrative Services, Inc. ("HASI") and EmCare, both wholly-owned subsidiaries of EmCode, for breach of contract and conversion, eventually adding a negligence claim.[1]  In January 2001 Green Country entered into separate contracts with EmCare, d/b/a Medtrust Healthcare Services, and HASI to provide billing and financial management services (EmCare contract) and administrative support services (HASI contract) to Green Country. In the *Green Country Litigation*, Green Country alleged in its complaint that HASI and EmCare were liable for breach of contract and conversion arising from their failure, neglect, and refusal to provide the services they had agreed to perform.

Nutmeg insured EmCode under three successive one-year term insurance policies for the period May 16, 2002 through May 16, 2005.  Each policy was a "claims-made and reported"-type insurance policy.[2]  The terms of the Policy required disclosure of pending or

---

[1]The court recounts the evidence in a light favorable to EmCode and EmCare as the summary judgment nonmovants and draws all reasonable inferences in their favor. *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

[2]These policies are also referred to as "claims-made" policies, and the court will use this shorthand form in this memorandum opinion and order.

potential suits against the insured prior to its initial inception and before subsequent renewals.  EmCode renewed the Policy annually until May 16, 2005, when the Policy expired.

When Green Country sued HASI and EmCare in March 2003 for breach of contract and conversion, EmCode did not forward a copy of the complaint to Nutmeg or otherwise disclose or report the factual allegations of the lawsuit to Nutmeg during the 2002-03 Policy term.  Nor did it do so during the 60-day reporting period that followed the expiration of the 2002-03 Policy (i.e., the tail period).

Green Country amended its complaint in June 2003, asserting in its first amended complaint two claims for breach of contract (addressing two separate contracts) and one claim for conversion. EmCode did not forward to Nutmeg a copy of the first amended complaint or otherwise disclose or report the factual allegations of the *Green Country Litigation* to Nutmeg during the 2003-04 Policy term or the 60-day reporting period that followed.

When EmCode renewed the Policy for the third and final annual period of May 16, 2004 to May 16, 2005, it did not report the *Green Country Litigation* to Nutmeg in accordance with the terms of the renewal.  In January 2005 Green Country filed a second amended complaint alleging, in addition to the breach of contract and conversion claims, a new cause of action for negligence based essentially on the same factual allegations asserted in its

- 3 -

complaint and first amended complaint.  A few days later, EmCode forwarded a copy of the second amended complaint to Nutmeg, who tendered a defense, subject to a full reservation of rights.  About two weeks later, Nutmeg received copies of Green Country's complaint and first amended complaint.

After reviewing the complaint and first amended complaint, Nutmeg denied coverage.  It concluded that EmCode had breached conditions precedent to coverage by failing to report the claim during the 2002-03 Policy term, when it was "first made," or during the Policy's 60-day reporting period.

EmCode and EmCare then brought this lawsuit against Nutmeg in Texas state court, alleging that Nutmeg had a duty to defend and indemnify EmCode and EmCare.[3]  Nutmeg removed the case to this court based on diversity of citizenship.  The following five motions are pending for decision: (1) Nutmeg's May 18, 2006 motion for summary judgment; (2) plaintiffs' June 9, 2006 motion for leave to amend complaint; (3) plaintiffs' June 26, 2006 motion for leave to supplement evidence in support of summary judgment response; (4) Nutmeg's September 5, 2006 motion to exclude expert opinions of Olie R. Jolstad ("Jolstad"); and (5) Nutmeg's September 12, 2006 motion to extend the discovery deadline.

---

[3]As the court notes *infra* at note 11, the petition referred in error to the 2003-04 Policy as the basis for the claim.

II

The court turns first to Nutmeg's motion for summary judgment.

A

Nutmeg contends that Green Country's complaint, filed in March 2003, alleged "wrongful acts" involving professional services against HASI and EmCare[4] that constituted a "claim" under the Policy during the 2002-03 Policy period.  It maintains that because the specific allegations gave rise to a claim no later than March 2003, they were not first made during the May 16, 2003 to May 16, 2004 Policy.  And because the claim was not reported until February 2005, it is not covered under the Policy because EmCode failed to report the claim as soon as practicable, but in no event later than 60 days after the expiration of the Policy period, as the Policy required.  Nutmeg therefore argues that EmCode failed to comply with the following conditions precedent: report the claim within the Policy period in which the claim was first made, or during the 60-day tail period; immediately forward to Nutmeg any suit papers and the like; and provide written notice of the claim details as soon as practicable.

Nutmeg also contends that the Policy required immediate notice

_____

[4]Nutmeg refers throughout its brief to EmCode as if it were the party sued in the *Green Country Litigation*.  *See, e.g.*, D. Br. 9.  Plaintiffs refer collectively to EmCode and EmCare as "EmCare." *See, e.g.,* Ps. Br. 1.  For clarity, the court will refer to EmCode's wholly-owned subsidiaries, HASI and EmCare, as the defendants in the *Green Country Litigation* and to EmCode as the insured.

- 5 -

of every demand, notice, summons, of other process.  It posits that because the *Green Country Litigation* was filed and the first claim made no later than the 2002-03 Policy period, EmCode was required to report the lawsuit immediately, provide additional written information as soon as practicable, and no later than 60 days following the expiration of the Policy period; the 22-month delay in forwarding the complaint did not satisfy the Policy's requirement that the insured "immediately forward process" to the insurer; and because Texas law clearly mandates compliance with a claims-made policy's reporting requirements as a condition precedent to coverage, the failure to timely report the claim barred coverage, regardless whether Nutmeg was prejudiced.

Plaintiffs generally accept Nutmeg's statement of facts and its supporting evidentiary appendix.[5]  They posit, however, that when Green Country filed its second amended complaint and for the first time explicitly asserted a negligence claim,[6] EmCode promptly

---

[5]Plaintiffs adopt the evidence contained in Nutmeg's appendix. They also submit an appendix that contains the affidavit of Todd Zimmerman, Esquire, General Counsel of Emergency Medical Services Corporation (plaintiffs' corporate parent), in which Zimmerman avers that he believed that Green Country's complaint was not covered under the 2002-03 Policy.

[6]Plaintiffs refer to plural negligence "claims" in their briefing.  It is apparent, however, that Green Country alleged a single negligence cause of action in its second amended complaint. Plaintiffs' references to multiple negligence "claims" are to distinct allegations of negligent acts or omissions alleged in the second amended complaint.  The court will refer to Green Country's negligence claim in the singular.

notified Nutmeg of the second amended complaint, as required under the 2004-05 Policy.[7]   Plaintiffs argue that summary judgment must be denied because Green Country's new negligence claim was potentially covered under the 2004-05 Policy, and EmCode promptly tendered the required notice.   They posit that Nutmeg never disputed this prompt notice or that the negligence claim was covered under the 2004-05 Policy, but instead denied coverage on the basis that the claims were not first reported during the 2002-03 Policy period, when Green Country filed its complaint. Plaintiffs contend that Nutmeg implicitly acknowledges that it would have accepted coverage for the claim had it been submitted in 2003, and, if so, they are legally excused from submitting the claim in 2003.[8]

Plaintiffs also maintain that even if Green Country's complaint was a claim first made during the 2002-03 Policy period, EmCode was legally excused from giving notice within the period required under the 2002-03 Policy.   They contend that Texas law excuses late notice when the insured had a reasonable and prudent belief, reached after a full investigation of all the surrounding

_____

[7]It is not clear from plaintiffs' brief that they dispute that the *Green Country Litigation* was a claim "first made" under the 2002-03 Policy, although this premise appears to be implicit in their summary judgment briefing.

[8]Plaintiffs offer neither authority for this proposition nor an adequate explanation for their reasoning in support, and the court accordingly declines to address or accept it.

facts and circumstances, that a claim was not covered.  According to plaintiffs, EmCode had such a belief.  Todd Zimmerman, Esquire ("Zimmerman"), General Counsel of Emergency Medical Services Corporation (plaintiffs' corporate parent), reviewed the 2002-03 Policy and the *Green Country Litigation*, and he concluded, based on his experience with similar policies and on a review of this Policy, that the 2002-03 Policy did not cover the types of claims alleged——i.e., breach of contract and conversion.  Zimmerman adhered to this conclusion after Green Country filed its first amended complaint.  But when Green Country filed its second amended complaint, which for the first time asserted a claim for negligence, Zimmerman understood that the claim was covered by the 2004-05 Policy, and EmCode promptly gave Nutmeg notice of the new claim.[9]

Nutmeg replies that, under Texas law that governs a claims-made policy, EmCode's failure to timely report the claim first made against it in March 2003 in the *Green Country Litigation* vitiates coverage under all subsequent policies, even when the lawsuit has

---

[9]Plaintiffs also cite Nutmeg's assertion in *Nutmeg Insurance Co. v. Clear Lake City Water Authority*, 229 F.Supp.2d 668 (S.D. Tex. 2002), that it had no duty to defend or indemnify where the underlying suit was for intentional breach of contract.  They argue that, depending on Nutmeg's present position concerning the inconsistencies between its arguments in that case and in the present suit, EmCode's notice either was timely or its failure to provide timely notice was excused.  Because the court holds that plaintiffs cannot rely on "excused late notice" in the context of this claims-made policy, the court need not address this argument.

been amended to include a new cause of action or a new theory of recovery, if the new cause of action arises out of the same or essentially the same facts as alleged in the prior complaint.  It contests plaintiffs' attempt to excuse EmCode's failure to report the Green Country claim under the 2002-03 Policy, contending that the grounds on which they rely do not apply to claims-made policies and that the cases they cite involved occurrences policies.  Nutmeg further posits that even if delayed notice can be excused in the context of a claims-made policy, plaintiffs have failed to offer any competent evidence that EmCode reasonably believed there was no insurance coverage for the claims made the basis of the *Green Country Litigation* when the suit was first filed in March 2003.

B

The court begins by placing to one side plaintiffs' reliance on their alternative contention that EmCode's late notice was excused.  Plaintiffs have failed to offer authority for the proposition that an insured's reasonable and prudent belief that a claim was not covered excuses late notice under a *claims-made* policy.  The cases on which plaintiffs' rely address *occurrence* policies.

> Courts traditionally distinguish between two types of insurance policies.  "An 'occurrence' policy covers all claims based on an event occurring during the policy period, regardless of whether the claim or occurrence itself is brought to the attention of the insured or made known to the insurer during the policy period."

- 9 -

*Fed. Ins. Co. v. CompUSA, Inc.*, 239 F.Supp.2d 612, 617 (N.D. Tex.
2002) (Fitzwater, J.) (quoting *Yancey v. Floyd West &* Co., 755
S.W.2d 914, 918 (Tex. App. 1988, writ denied)), *aff'd on the basis
of the district court opinion*, 319 F.3d 746 (5th Cir. 2003) (per
curiam).  In contrast, "[a] 'claims-made' policy covers occurrences
which may give rise to a claim that comes to the attention of the
insured and is made known to the insurer during the policy period."
*Id.* (quoting *Yancey*, 755 S.W.2d at 918).

> The purpose of claims-made policies, unlike
> occurrence policies, is to provide exact
> notice periods that limit liability to a fixed
> period of time after which an insurer knows it
> is no longer liable under the policy, and for
> this reason such reporting requirements are
> strictly construed.

*Nat'l Union Fire Ins. Co. v. Willis*, 296 F.3d 336, 343 (5th Cir.
2002) (internal quotation marks omitted) (quoting *Resolution Trust
Corp. v. Ayo*, 31 F.3d 285, 289 (5th Cir. 1994)).  "Allowing
coverage beyond that period would be to grant the insured more
coverage than that which was bargained for, and to require insurers
to provide coverage for risks not assumed." *Id.* (citing *United
States v. A.C. Strip*, 868 F.2d 181, 187 (6th Cir. 1989)).

Plaintiffs do not appear to acknowledge this critical
distinction between policy types, and they fail to offer a
compelling reason or to cite any authority for why the court should
extend the "excused late notice" rule to a claims-made policy.
Absent such reasoning or authority, the court is unable to hold

that plaintiffs' 22-month delay in proving notice is excusable.

C

The court considers next whether Green Country's complaint constituted a "claim" that was "first made" under the 2002-03 Policy, and, if so, whether coverage under the 2003-04 and 2004-05 Policies was vitiated as a result of EmCode's late notice.[10]

Under the terms of the Policy, a "Claim" is defined as

> receipt by the Insured of a written demand naming the Insured seeking Damages, Professional Services, or equitable relief arising out of a Wrongful Act by the Insured or any Entity for whom the Insured is legally liable.

D. App. 52 (bold font omitted).  The Policy defines "Wrongful Act" to mean "any actual or alleged act, error or omission in the rendering or failure to render Professional Services." *Id.* at 53. The term "'Professional Services' means those services set forth in Item 7 of the Declarations requiring special learning or intellectual skill, performed by the Insured in the ordinary conduct of its profession for others for a fee, remuneration or other consideration; or as otherwise defined by endorsement to this Policy." *Id.* (bold font omitted).  The allegations in Green Country's complaint plainly alleged a "wrongful act," and therefore a "claim," under the Policy, because they related to errors or

---

[10]Although the fact that Green Country's complaint constituted a "claim" under the 2002-03 Policy appears largely undisputed, the court will decide this question to ensure that the issue is not left unresolved.

omissions arising out of the rendering of professional services and sought damages.   Green Country alleged that HASI and EmCare had failed to prepare an adequate budget or physician compensation reports, to establish and administer account procedures, controls, and systems for the development, preparation, and safe keeping of financial records, to timely prepare and make available monthly statistical financial reports and agreed on forms and formats, and to adequately monitor some billing expenses.   D. App. 124-25. Under the terms of the Policy, "[a] Claim is considered first made when the Insured receives notice of Claim from a claimant or such claimant's legal representative . . . ."   D. App. 52 (bold font omitted).   Accordingly, the complaint constituted a claim "first made" under the 2002-03 Policy.

D

The next question to be decided is whether coverage was vitiated under the 2003-04 and 2004-05 Policies.   Plaintiffs do not dispute that they failed to provide notice of Green Country's complaint, which the court has held was "first made" during the 2002-03 Policy term, during the Policy term or within 60 days thereafter.   They contend that when Green Country filed its second amended complaint and for the first time explicitly asserted a negligence claim, EmCode promptly notified Nutmeg of the second amended complaint, as required under the 2004-05 Policy.   They argue that Green Country's new negligence claim was potentially

- 12 -

covered under the 2004-05 Policy, and EmCode promptly tendered the required notice.  Plaintiffs posit that Nutmeg never disputed this prompt notice or that the negligence claim was covered under the 2004-05 Policy, but instead denied coverage on the basis that the claim was not first reported during the 2002-03 Policy period, when Green Country filed its complaint.

The 2002-03 Policy provides, in pertinent part:

> [a]s a condition precedent to coverage under this Policy, the Insured shall report such Claim in writing to the Company as soon as practicable but in no event later than 60 days after expiration or termination of this Policy . . . .

D. App. 26 (bold font omitted).  Additionally, the 2002-03 Policy requires:

> [i]n the event of a Claim the Insured shall as a condition precedent to coverage afforded by this Policy:
> (1) Immediately forward to the Company every demand, notice, summons or other process . . . received by the Insured.

*Id.* at 31 (bold font omitted).  It is undisputed that EmCode did not report the *Green Country Litigation* to Nutmeg until 22 months after the receipt of service.  This is insufficient to satisfy the Policy provisions that required EmCode to immediately forward Green Country's complaint to Nutmeg and to report the claim in writing as soon as was practicable, but in no event later than 60 days after expiration or termination of the Policy, so as to satisfy the condition precedent to coverage.  Under Texas law, an insurer is

- 13 -

not required to show prejudice by late notice under a claims-made policy. *See, e.g., SingleEntry.com, Inc. v. St. Paul Fire & Marine Ins. Co.*, 117 Fed. Appx. 933, 936 (5th Cir. 2004) (unpublished opinion); *Hirsch v. Tex. Lawyers' Ins. Exch.*, 808 S.W.2d 561, 565 (Tex. 1991, writ denied). And as the court has already discussed, plaintiffs have not shown that their late notice can be legally excused.

Assuming *arguendo* that plaintiffs' reliance on the 2004-05 Policy is not procedurally barred,[11] it still fails, because, under the circumstances of this case, plaintiffs' late notice under the 2003-04 Policy vitiated coverage under the 2004-05 Policy. This suit is analogous to *National Union Fire Insurance Co.*, 296 F.3d 336. There the plaintiff in the underlying lawsuit filed suit in

---

[11]Plaintiffs have failed to plead a claim for coverage under the 2004-05 Policy. Their original petition, filed in state court prior to removal, is at this point their operative pleading. In it, plaintiffs actually rely only on the 2003-04 Policy. *See* Pet. ¶ 6. As plaintiffs recognize in their motion for leave to amend complaint, their state-court petition is defective in this respect. Ps. Mot. Leave to Amend 2; Ps. Reply Br. in Support of Mot. for Leave to Amend 2 ("[EmCode] initially asserted causes of action on an inapplicable insurance policy, and now seeks to assert those causes of action under the proper insurance policies."). They seek by amendment to rely on the 2004-05 Policy and alternatively on the 2002-03 Policy. Plaintiffs cannot, however, invoke the 2004-05 Policy for the first time in response to Nutmeg's summary judgment motion. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.") (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). The court will nevertheless address whether plaintiffs can recover under this policy because it is germane to the issue of futility of amendment, which the court decides below at § V.

1998 and added a claim for negligent misrepresentation in 2000. The insured argued that the negligent misrepresentation fell under the 2000 policy, and the insurer contended that the claim was part of the initial lawsuit and fell under the 1998 policy.   The district court concluded that the insured was foreclosed from relying on the 2000 policy because the claims made in the pleading filed in 2000 arose out of, were based on, or were attributable to a pending or prior litigation, or alleged or derived from the same or essentially the same facts as alleged in the pending or prior litigation, and were therefore expressly excluded from the coverage of the 2000 policy.  *Id.* at 341.

The Fifth Circuit affirmed.  It noted that all the insurance policies in question defined "Claim" as "a civil . . . proceeding . . . which is commenced by service of a complaint or similar pleading."  *Id.* at 341-42.  The panel reasoned that, under this definition, the underlying plaintiff's initial complaint commenced the civil proceeding as a whole, and amended complaints could not commence a civil proceeding that had already been commenced by the filing and service of the initial complaint.  *Id.* at 342.  Any other reading would result in one lawsuit's qualifying as two different civil proceedings.  The court concluded that this was particularly true when the amended complaint was based on facts identical to those that were used in the original petition. Therefore, nothing in the record supported the insured's contention

that the negligent misrepresentation claim gave rise to a new theory of recovery that was a separate claim governed by the 2000 policy.  The insured was therefore required to notify the insurer during the 1998 policy period.  *Id.*

Similarly, in the present case, the 2003-04 Policy defines the term "Claim" to mean "receipt by the Insured of a written demand naming the Insured seeking Damages, Professional Services, or equitable relief arising out of a Wrongful Act by the Insured or any Entity for whom the Insured is legally liable."  D. App. 52. The Policy defines "Wrongful Act" to mean "any actual or alleged act, error or omission in the rendering or failure to render Professional Services."  *Id.* at 53.  EmCode, through HASI and EmCare, its wholly-owned subsidiaries, received a written demand seeking damages arising out of a "Wrongful Act" when Green Country initiated the *Green Country Litigation* and served its complaint and process in 2003.  Even if the court assumes that EmCode received a new "demand" when Green Country filed its second amended complaint in 2005, it declines to hold that EmCode received a new demand that arose out of a new "Wrongful Act."  This is because the second amended complaint was based on the same or essentially the same set of facts as was the complaint, and the "Wrongful Act" was essentially the same.  *Compare* D. App. 123-25 (complaint) *with id.* at 129-33 (first amended complaint) *and id.* at 138-42 (second amended complaint).

- 16 -

If the court were to hold that the mere addition of a new theory of recovery or a new claim based on the same alleged "Wrongful Act" could enlarge the coverage provided under a claims-made policy, it would materially compromise a fundamental purpose for such a policy, which is "to provide exact notice periods that limit liability to a fixed period of time after which an insurer knows it is no longer liable under the policy." *Nat'l Union Fire Ins. Co.*, 296 F.3d at 343.   An insurer would be obligated to underwrite and issue such a policy on the assumption that the same covered conduct could subject it to liability perhaps years after the policy period had ended, simply because the plaintiff in the underlying litigation had changed the theory on which it sought to recover for the same conduct.   This in turn could impact the premiums that insurers charge for such policies, perhaps redounding to the detriment of insurance purchasers who may choose claims-made policies because they generally cost less.   The court declines to interpret the claims-made policy at issue in this case in a way that could lead to this result.

Accordingly, the court holds that Nutmeg is entitled to summary judgment dismissing plaintiffs' declaratory judgment and breach of contract claims.[12]

---

[12]Plaintiffs filed on June 26, 2006 a motion for leave to supplement evidence in support of summary judgment response.  They offer the affidavit of Jolstad, an insurance expert, who, in his affidavit, avers that Green Country's second amended complaint constituted claims that were potentially covered under the 2004-05

III

Nutmeg also moves for summary judgment on plaintiffs' common law claim for bad faith denial of coverage claim and their unfair settlement practice claim under Article 21.21 of the Texas Insurance Code claim. It argues that plaintiffs' extracontractual claims fail because there is no coverage for the underlying claim, and because there is no cause of action for third-party bad faith under Texas law. Plaintiffs have not responded to these grounds of Nutmeg's motion, and they implicitly concede that they cannot recover under either theory. This is corroborated by the fact that in their motion for leave to amend, which the court addresses *infra* at § IV, they seek leave to amend their state-court petition by replacing these two claims with a cause of action for unfair or deceptive insurance practice under Tex. Ins. Code Ann. §§ 541.060(a)(1), (a)(2)(A), and (a)(7), and 541.061(1) (Vernon 2007).

Accordingly, the court dismisses plaintiffs' common law claim for bad faith denial of coverage and their unfair settlement practice claim under Article 21.21 of the Texas Insurance Code.

───────────────

Policy, and that it was reasonable for EmCode to conclude that the complaint alleging only breach of contract and conversion claims was not covered because insurance companies routinely deny coverage for such claims. In view of the court's conclusion that EmCode failed to satisfy the condition precedent for recovering under the 2003-04 Policy and that this failure vitiated EmCode's right to recover under the 2004-05 Policy, the court denies the motion for leave to supplement evidence.

IV

The court now turns to plaintiffs' motion for leave to amend their complaint.

A

Plaintiffs seek leave to amend in order to change the insurance policy on which they rely from the 2002-03 Policy to the 2004-05 Policy (and alternatively on the 2002-03 Policy). They also request leave to assert a claim for unfair or deceptive insurance practice under Tex. Ins. Code Ann. §§ 541.060(a)(1), (a)(2)(A), and (a)(7), and 541.061(1) (Vernon 2007). Nutmeg opposes the motion on the basis of futility, contending that it has demonstrated that plaintiffs cannot recover under either policy, and that plaintiffs cannot recover on an extracontractual claim in the absence, as here, of a duty to defend or indemnify, and because Texas does not recognize a claim for common law bad faith in the context of a third-party coverage claim. Plaintiffs reply that they have successfully opposed Nutmeg's "premature motion for summary judgment," Ps. Reply Br. in Support of Mot. for Leave to Amend 2, on their contract claim. They maintain that because the court should deny summary judgment, their proposed amended complaint is not futile. Plaintiffs do not assert, however, that their extracontractual claim under various provisions of the Texas Insurance Code can survive absent a showing that Nutmeg had a duty to defend or indemnify in the *Green Country Litigation*.

- 19 -

B

A court may deny leave to amend when the amendment would be futile. *See, e. g., FDIC v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994) (holding that "leave to amend need not be granted when it would be futile to do so"). Moreover, "[s]ummary judgment may be granted when a motion for leave to amend is pending." *Fresh Am. Corp. v. Wal-Mart Stores, Inc.,* 2004 WL 983615, *6 (N.D. Tex. Apr. 29, 2004) (Ramirez, J.). This court typically does not address the issue of futility in the context of a motion for leave. *See, e.g., Poly-Am., Inc. v. Serrot Int'l Inc.*, 2002 WL 206454, at *1-*2 (N.D. Tex. Feb. 7, 2002) (Fitzwater, J.). Here, however, it has already addressed the merits of plaintiffs' proposed contract claim in the context of Nutmeg's motion for summary judgment. Were the court to grant leave to amend to assert a breach of contract claim based on the 2004-05 Policy and alternatively on the 2002-03 Policy, it would ultimately grant summary judgment dismissing the claim on the reasoning and grounds set out in this opinion.

The court likewise concludes that plaintiffs' proposed extracontractual claim is futile. In reply to Nutmeg's opposition brief, plaintiffs do not address their proposed claim under Tex. Ins. Code Ann. §§ 541.060(a)(1), (a)(2)(A), and (a)(7), and 541.061(1). Specifically, they do not attempt to demonstrate that it is viable absent a showing that Nutmeg also breached the Policies at issue. Even assuming that a claim for unfair or

deceptive insurance practice under the Texas Insurance Code can be based on conduct that accompanies or exceeds the mere breach of the insurance policy, plaintiffs do not argue that they are proposing such a claim.  And a reading of their proposed amended complaint shows that the contemplated claim is based on Nutmeg's "refusal to tender coverage under the [2004-05] Policy," Proposed 1st Am. Compl. ¶ 18, or, alternatively, its "refusal to tender coverage under the [2002-03] Policy," id. at ¶ 19.  In other words, plaintiffs' extracontractual claim is based on Nutmeg's denial of coverage under the Policies.

Accordingly, because the proposed amendment is futile, the court denies plaintiffs' motion for leave to amend.

V

Because the court has not considered Jolstad's testimony, Nutmeg's motion to exclude his testimony is denied without prejudice as moot.  Nutmeg's motion to extend the discovery deadline is also denied without prejudice as moot.

*     *     *

Nutmeg's May 18, 2006 motion for summary judgment is granted, and plaintiffs' claims for declaratory judgment, bad faith denial of coverage, unfair settlement practice, and breach of contract are dismissed.  Although Nutmeg did not explicitly mention plaintiffs' claim for attorney's fees in its motion, that claim clearly depends on the viability of plaintiffs' other causes of action.  Plaintiffs

therefore lack a basis to recover attorney's fees, and this claim must likewise be dismissed.

Plaintiffs' June 9, 2006 motion for leave to amend complaint and their June 26, 2006 motion for leave to supplement evidence in support of summary judgment response are denied.

Nutmeg's September 9, 2006 motion to exclude expert opinions of Jolstad and its September 12, 2006 motion to extend the discovery deadline are denied without prejudice.

A judgment dismissing this action with prejudice is being filed today.

**SO ORDERED.**

March 15, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE